UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCUS CHAMBERS,

         Petitioner,

  v.

UNITED STATES OF AMERICA,

         Respondent.

No. 11-CR-630 (KMK)
No. 16-CV-1049 (KMK)

OPINION & ORDER

Appearances:

Marcus Chambers
Lewisburg, PA
*Pro Se Petitioner*

Douglas S. Zolkind, Esq.
U.S. Attorney's Office, Southern District of New York
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

  In October 2012, Marcus Chambers ("Chambers" or "Petitioner") pleaded guilty to three narcotics and firearms charges. In June 2014, Chambers withdrew his plea, entered a new guilty plea, and was sentenced in February 2015 to 132 months' imprisonment. Chambers has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence, (Pet. (Dkt. No. 1148)), as well as a Supplemental Petition, (Supp. Pet. (Dkt. No. 1197)), and a Motion seeking partial relief pursuant to Fed. R. Crim. P. 52, (Rule 52 Motion (Dkt. No. 1226)).[1]

  For the reasons stated herein, the Petition, Supplemental Petition, and Rule 52 Motion are denied.

---

[1] All record citations are to Case No. 11-CR-630 (KMK), unless otherwise indicated.

I. Factual History

On August 3, 2011, a grand jury returned Indictment S1 11-CR-630 (the "Indictment"), charging Petitioner and 46 co-defendants with conspiring to distribute, and possessing with intent to distribute, more than 280 grams of crack from in or about 2000 up to and including in or about August 2011, in violation of 21 U.S.C. § 846. (Dkt. No. 4.) The Indictment also charged Petitioner and most of his co-defendants with the use, possession, and discharge of firearms during and in relation to that narcotics conspiracy, in violation of 18 U.S.C. § 924(c) and 2.

These charges followed an investigation of a violent street gang known as the "Elm Street Wolves," which operated in and around Yonkers during the time alleged in the Indictment. The Elm Street Wolves and their associates sold crack at, among other places, the intersection of Elm and Oak Streets. The Indictment alleged that certain members and associates of the Elm Street Wolves maintained firearms for use by other members and associates of the gang. These firearms would be stored at readily-accessible locations and be used to, among other things, protect the gang's territory and attack rival gang members.

On October 26, 2012, pursuant to a plea agreement (the "Initial Plea"), Chambers pleaded guilty to a three-count superseding information. (*See* Initial Plea 1–2; Initial Plea Hearing ("Initial Plea Tr.") (Oct. 26, 2012) 3, 13, 70–71 (Dkt. No. 466).) However, in June 2014, after Petitioner's new counsel discovered that the evidence established that Petitioner's discharge of firearms occurred before his eighteenth birthday, the Government and Petitioner agreed that Petitioner would withdraw his Initial Plea and enter a new guilty plea pursuant to a new plea agreement (the "Plea Agreement"). (*See* Plea Agreement (June 4, 2014) (Dkt. No. 1160 Ex. A).) Pursuant to the Plea Agreement, Petitioner pleaded guilty to: (i) conspiracy to distribute, and to possess with the intent to distribute, at least 28 grams of crack cocaine, in violation of 21 U.S.C.

2

§ 846; (ii) possession of a firearm during and in relation to the narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (iii) transferring firearms with the knowledge that they would be used to commit narcotics trafficking crimes, in violation of 18 U.S.C. § 924(h). (*Id.* at 2.) Petitioner further agreed, among other things, that his sentencing range was 168–195 months' imprisonment, with a mandatory minimum of 120 months' imprisonment. (*Id.* at 5.)[2]

The Plea Agreement also contained a waiver providing that Petitioner would not "file a direct appeal," "nor bring a collateral challenge, including but not limited to an application under [28 U.S.C. § 2255]," "nor seek a sentence modification . . . of any sentence within or below the Stipulated Guidelines Range of 168 to 195 months of imprisonment." (*Id.* at 6–7.) The Parties further agreed that this "provision [was] binding on the parties even if the Court employs a Guidelines analysis different from that stipulated herein." (*Id.* at 7.)

Before accepting Petitioner's plea, the Court conducted a thorough Rule 11 allocution. (Plea Hearing (July 18, 2014) ("Plea Tr.") (Dkt. No. 1160 Ex. B).) The Court stated to Petitioner that he would ask him "a series of questions" in order "to make sure that [Petitioner] is pleading guilty to these charges because [he is] guilty" and "to make sure that [Petitioner] understand[s] fully the consequences of being convicted of these charges by way of a guilty plea." (Plea Tr. 7.) The Court thereafter confirmed that Petitioner was competent to enter a guilty plea, that he was fully aware of his constitutional rights and the waiver of many of those rights should he plead guilty, that he had had enough time to talk about the case with his attorney and was satisfied with his attorney's representation of him, that he was aware of the charges against him, and that he was aware of the statutory maximum and mandatory minimum sentences he faced. (*Id.* at 8, 11–

---

[2] However, in keeping with the November 2014 amendment to the Sentencing Guidelines, Petitioner's base offense level for Counts One and Three was reduced from 31 to 29, thus ultimately reducing the Guidelines range to 147 to 168 months' imprisonment.

3

19, 24–29, 32–39, 41, 50.) The Court also advised Petitioner that it was the Court, and only the Court, that would determine the appropriate sentence, and that the Court was not bound by what the Parties agreed to in the Plea Agreement regarding the Guidelines Range. (*Id.* at 31–32, 36–37.) And, the Court specifically discussed with Petitioner the meaning and significance of the waiver provision, advising him that if the Court imposed a "sentence that is within or below the stipulated guideline range," under that provision, he had "agreed [that he would] not . . . legally challenge" that sentence "in any way, whether [via] habeas petition or a motion or an appeal." (*Id.* at 38.) The Court thereafter asked Petitioner to explain what he did that made him guilty of the three charges. (*Id.* at 46.) Petitioner admitted to participating in a crack distribution conspiracy between 2000 and August 2011, and to possessing and sharing firearms in furtherance of this conspiracy. (*Id.* at 46–50).

At sentencing, the Court adopted the calculation agreed to by the Parties and calculated by the Probation Department, but imposed a sentence of 132 months' imprisonment. (*See* Sentencing Hearing (Feb. 11, 2015) ("Sentencing Tr.") 21–23, 29 (Dkt. No. 1160 Ex. C).) Petitioner did not appeal his conviction or sentence and is currently serving his sentence.

Petitioner subsequently filed the instant § 2255 Petition, Supplemental § 2255 Petition, and Rule 52 Motion seeking partial relief. (Dkt. Nos. 1148, 1197, 1226.)

## II. Discussion

### A. Standard of Review

#### 1. § 2255 Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

4

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[3] "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *1 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To

---

[3] 28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

5

justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id.* at 131. Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

    2.  Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Tanveer v. United States*, No. 06-CR-1135, 2019 WL 430262, at *4 (S.D.N.Y. Feb. 4, 2019) (same). Thus, to satisfy this prong, a petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

6

To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (same). Measuring this probability depends on the context of the alleged error. Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013). Where the "[petitioner's] specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the prejudice issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Chhabra*, 720 F.3d at 408 (citation and quotation marks omitted). In the sentencing context, a petitioner must demonstrate that, but for counsel's ineffective assistance, a different sentence was probable. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997).

B. Analysis

In his Petition, Petitioner asserts three grounds for vacatur of his conviction. First, he argues that he is innocent of the firearms charge under 18 U.S.C. § 924(c). (Pet. 6.) Second, he claims that his counsel was constitutionally ineffective for failing to conduct a proper investigation and for failing to advise Petitioner that he could "[c]hallenge all counts presented to the grand jury." (*Id.*) Third, he asserts that he pleaded guilty to crimes governed by

7

unconstitutional statutes. (*Id.*) In his Supplemental Petition, Petitioner claims that he was unlawfully prosecuted for crimes he committed while a juvenile, (Supp. Pet. 1), that his conviction should be vacated because he was not "afforded" the "right to peruse the [m]ittimus [p]apers," (*id.*), and that his counsel was ineffective for allowing Petitioner to be given a higher sentence "than his original sentence," (*id.* at 2). In his Rule 52 Motion, Petitioner seeks "partial relief" by having the Court grant his Supplemental Petition on the theory that the Government failed to respond to it. (Rule 52 Motion 2.)

### 1. Innocence

Taking the claims in turn, the Court begins with Petitioner's assertion that he is innocent of any violation of 18 U.S.C. § 924(c). In support of this claim, Petitioner merely argues that there was "no evidence to support conviction under this statute," for example, "no gun was found," and the Government provided no "*Brady* material . . . to properly inform [Petitioner] of what firearm was used and for what crime." (Pet. 6.) This claim is meritless.

First, this claim is waived. As noted above, Petitioner agreed that he would not "file a direct appeal," or litigate "under Title 28, United States Code, Section 2255 and/or Section 2241[,] . . . any sentence at or below the Stipulated Guidelines Range" of 168 to 195 months' imprisonment. (Plea Agreement 6.) The Court specifically highlighted this provision for Petitioner during the colloquy at sentencing. (Plea Tr. 38.) Because the Court imposed a sentence below the Stipulated Guidelines Range, Petitioner must first overcome the hurdle imposed by this provision. *See Flamenco v. United States*, No. 11-CV-633, 2014 WL 775000, at *3 (E.D.N.Y. Feb. 24, 2014) ("Where a defendant knowingly and voluntarily waives his right to appeal [or bring a collateral challenge] if his sentence falls at or below a stipulated range pursuant to the plain language of a plea agreement, a challenge to the sentence must be

dismissed."). "A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is . . . valid and enforceable." *Abramo v. United States*, No. 12-CV-1803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Frederick v. Warden, Lewisberg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement."); *Russo v. United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004) ("[A] waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petition challenging his or her sentence." (citing *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995))). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (citation omitted). In determining whether a defendant understood the consequences of a waiver, the district court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]." *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001); *see also Abramo*, 2014 WL 1171735, at *9 (same).[4]

---

[4] The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). One area where the presumptive enforceability of a waiver may be overcome is by "an attack on the validity of the process by which the waiver has been procured, here, the [Plea Agreement]." *Frederick*, 308 F.3d at 195. For example, waivers do not prevent defendants from seeking relief from the underlying plea where "[a]n ineffective assistance of counsel claim . . . concerns the advice the defendant received from counsel." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (alteration and quotation marks omitted). In such circumstances, the waiver is deemed not to have been knowing or voluntary. *See id.* at 138–39. This exception, as discussed below, does not apply here.

There are other exceptions that can invalidate a waiver in this context. *See Karimu v. United States*, Nos. 10-CR-422, 13-CV-1689, 2013 WL 4017168, at *3–4 (S.D.N.Y. Aug. 6, 2013) (discussing circumstances barring the application of a sentence/collateral challenge waiver provision in a plea agreement). One occurs when a court imposes a sentence based on certain "constitutionally impermissible factors," such as a defendant's race, ethnicity, or other prohibited biases. *Gomez-Perez*, 215 F.3d at 319; *see also United States v. Johnson*, 347 F.3d 412, 414–15 (2d Cir. 2003) (indigent status); *United States v. Jacobson*, 15 F.3d 19, 22–23 (2d Cir. 1994)

It is beyond dispute that Petitioner entered into the Plea Agreement and that Petitioner acknowledged that he fully understood the terms of this agreement, including the waiver provision.  (*See* Plea Tr. 19–21, 38.)  *See also Chen v. United States*, Nos. 11-CR-1038, 14-CV-4987, 2017 WL 4326529, at *2, *5 (S.D.N.Y. Sept. 28, 2017) (noting that the record established the petitioner's knowing and voluntary waiver of right to pursue a § 2255 challenge to a sentence within the stipulated guidelines range); *Mann v. United States*, Nos. 15-CR-667, 16-CV-7556, 2016 WL 5900174, at *3–4, *8 (S.D.N.Y. Oct. 11, 2016) (same); *Ferreira-Torres v. United States*, Nos. 08-CV-8025, 02-CR-1347, 2010 WL 2594909, at *2 (S.D.N.Y. June 28, 2010) (same).  As a result, Petitioner waived this claim.

Second, Petitioner's claim has no evidence to support it, which, when weighed against his admission, made in court and under oath, that he was guilty of the § 924(c) count, (*see* Plea Tr. 46–50), condemns it to failure.  Even conceding Petitioner's assertion that "no gun was found," (Pet. 6), for these purposes, does not mean that Petitioner did not possess any firearms in connection with the narcotics conspiracy.  It just means the gun he possessed might not have been found by law enforcement officials.  No more compelling is the assertion that Petitioner was not informed as to which firearm or firearms he possessed.  (*Id.*)  Petitioner admitted during his plea allocution that he possessed a firearm in connection with the narcotics conspiracy and that he "shared guns in furtherance of the drug conspiracy."  (Plea Tr. 46.)  As the Supreme Court has emphasized, "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

---

(naturalization status).  Relatedly, a court's "abdication of [its] judicial responsibility," by failing to offer *any* rationale for its sentence, can invalidate a waiver.  *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995).  Another exception involves a breach of the plea agreement by the Government.  *See Gomez-Perez*, 215 F.3d at 319.  None of these circumstances has been, nor could be, alleged here.

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also Gonzalez v. Stanford*, No. 13-CV-3324, 2016 WL 3963166, at *10 (S.D.N.Y. July 21, 2016) ("Statements made by a defendant during his guilty plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (citation and quotation marks omitted)).

Third, there was evidence that Petitioner did possess firearms in connection with the narcotics conspiracy (a charge which Petitioner does not contest here). The Government has asserted that it had, among other things, cooperating witness testimony and evidence from prior arrests of Petitioner that established Petitioner's role in the narcotics conspiracy and his possession and sharing of firearms in connection with that conspiracy. (Plea Tr. 44–45.) Petitioner has not rebutted this claim. Accordingly, this claim is denied.

### 2. Ineffective Assistance

Next, Petitioner asserts his counsel was ineffective for failing to investigate his case and for failing to advise Petitioner that he could "[c]hallenge all counts to be presented to the grand jury." (Pet. 6.) This claim has no merit. First, Petitioner offers no specifics about what, in particular, was deficient about counsel's investigation. He does not identify *any* helpful witnesses or evidence that were available to Petitioner but somehow undiscovered by counsel. Because Petitioner has entirely failed to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," *Strickland*, 466 U.S. at 687, Petitioner has not satisfied the first prong of establishing that his counsel was constitutionally ineffective. Second, Petitioner offers no credible explanation how a better investigation would have led him to elect to go to trial instead of pleading guilty. Thus,

Petitioner has not satisfied the second prong of the ineffective assistance claim. Accordingly, this claim is rejected. *See Bethea v. Walsh*, No. 09-CV-5037, 2016 WL 258639, at *17 (E.D.N.Y. Jan. 19, 2016) ("As many courts in this circuit have observed, undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." (citation and quotation marks omitted)); *Paige v. Lee*, 99 F. Supp. 3d 340, 349–50 (E.D.N.Y. 2015) ("Because [the petitioner's] claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, it must be dismissed as meritless."); *Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006) (noting that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)); *Lamberti v. United States*, No. 95-CV-1557, 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998) (rejecting Sixth Amendment claim based on failure to investigate where the allegations "do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result"); *Madarikan v. United States*, No. 95-CV-2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses where the petitioner's allegations of ineffective assistance were "conclusory, and [gave] no indication as to what exculpatory evidence may have been revealed by an investigation"); *United States v. Vargas*, 871 F. Supp. 623, 624 (S.D.N.Y. 1994) (rejecting ineffective assistance claim based on failure to investigate where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored").

### 3. Knowing and Voluntary Plea

The final claim in the Petition is that Petitioner did not fully understand "the actual prongs required to be sentenced under [§] 924(c)." (Pet. 6.) This wholly unsupported claim is decisively rebutted by the plea itself. The Government, at the Court's request, recited the elements that would have to be established or proven before Petitioner could be convicted of this charge. (Plea. Tr. 23.) Following this recitation, Petitioner acknowledged that he understood what the elements were. (*Id.* at 24.) He subsequently admitted to the conduct that he and his lawyer acknowledged made him guilty of violating § 924(c). (*Id.* at 46–48.) Given these admissions, made in court and under oath, Petitioner's vague and self-serving statements to the contrary are insufficient to support his claim. *See Esparra v. United States*, No. 12-CR-844, 2016 WL 5107036, at *4 (S.D.N.Y. Sept. 19, 2016) (noting that "a petitioner's sworn statements in court that he understood the plea agreement carry a strong presumption of truthfulness that should carry over a later, bald assertion to the contrary" (citing *Blackledge*, 431 U.S. at 74)); *see also United States v. Zakirov*, 305 F. Supp. 3d 438, 442 (E.D.N.Y. 2018) (rejecting motion to withdraw guilty plea where his "claims [were] belied by [his] sworn statements during the plea hearing"). Accordingly, it is rejected.

### 4. Supplemental Claims

In his Supplemental Petition, Petitioner claims that he was unlawfully prosecuted for crimes he committed while a juvenile, (Supp. Pet. 1), that his conviction should be vacated because he was not "afforded" the "right to peruse the [m]ittimus [p]apers," (*id.*), and that his counsel was ineffective for allowing Petitioner to be given a higher sentence "than his original sentence," (*id.* at 2). The first claim is belied by Petitioner's plea allocution, as he admitted that, "[d]uring the time of the conspiracy, *after* [he] turned [eighteen], [he] possessed a gun." (Plea

Tr. 46 (emphasis added).) The second claim, even if true, is no basis to vacate Petitioner's conviction. The Court entered a proper judgment of conviction, which accurately recorded the sentence Petitioner was given. (Dkt. No. 1065.) Nothing more was required to commit Petitioner to the custody of the Attorney General to serve that sentence. *Cf. Hill v. U.S. ex rel Wampler*, 298 U.S. 460, 465 (1936) (noting that a "prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence," but that if "the judgment and sentence do not authorize [defendant's] detention, no 'mittimus' will avail to make detention lawful"). The third claim is conclusively disproven by the record. The initial plea agreement of October 2012 carried a mandatory minimum term of 15 years' imprisonment. (Initial Plea 1–2; *see also* Initial Plea Tr. 36, 40, 42–43; Plea Tr. 3.) The Plea Agreement pursuant to which Plaintiff was sentenced carried a mandatory minimum term of 10 years, (Plea Agreement 1), and, indeed, the Court imposed a sentence of 132 months' (11 years') imprisonment, four years fewer than Petitioner would have received had he been sentenced according to the Initial Plea. Accordingly, counsel did not expose Petitioner to a higher sentence in the Plea Agreement.[5]

### III.  Conclusion

For the reasons discussed above, the Court dismisses the Petition, the Supplemental Petition, and the Rule 52 Motion.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be

---

[5] Because there is no merit to any claims in the Supplemental Petition, there is no basis to grant Petitioner's Rule 52 Motion.

taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent, to mail a copy of this Opinion to Petitioner, and to close this case.

SO ORDERED.

DATED: March 29, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE